### SHENFIELD *v.* SCHIRMER and others.

(*Circuit Court, S. D. New York.* August 7, 1884.)

PATENT—SUSPENDER ENDS.
The suspender ends made conformably to Schirmer's patent of June 27, 1876, do not infringe the patent of Shenfield.

In Equity.
*F. C. Reed,* for complainant.
*Wetmore & Jenner,* for defendants.

WALLACE, J. The suspender ends made by the defendants conformably to their patent of June 27, 1876, are not an infringement of the complainant's patent.

The suspender ends of the complainant's patent are described as made of a double flattened cord or strip bent around into a loop or united together, leaving sufficient of the loop open to form the button-hole, and united to a buckle or clasp by the attaching pieces, *d.* The cord or strip is composed of woven, braided, knitted, or crocheted threads of suitable fibrous material, laid up into the form of a complete flat cord or strip, and when the cord or strip is folded to form the button-hole loop, the seam above the loop may be made by sewing, knitting, crocheting, or otherwise; or the knitting or crocheting is commenced at the line where the strips meet and extended at both sides thereof and around the button-hole by the successive ranges of interlocked loops.

The claim is, "the suspender end made of a flat cord or strip of fibrous material bent into a loop laid flatwise, united at the inner edges, and connected to the attaching pieces as set forth."

The latter part of the description relates to the manner of securing the edges of the fabric by re-enforcing or covering them around the button-hole by crocheting or knitting, and is of no materiality for present purposes. There was no novelty in the attaching pieces.

Button-straps for suspenders, made of woven material, were old; flat suspender ends of various materials, with a button-hole cut in them, were old; and suspender ends made of a round cord, with the ends turned back and fastened to form a loop, were old. The complainant's invention was apparently suggested by the latter description of suspender ends, and was designed to remedy the objection against the round cord, which is stated in the description to be "that it does not lie flat against the person or beneath the button." What he did was to substitute a flat cord or strip for the round cords previously used, which may have been an invention, but was an invention of a very narrow kind.

In view of the prior state of the art, and the language of the description and claim of the patent, the complainant's patent is to be construed as one for a suspender end made of a flat cord or strip, bent to form a button-hole, and the ends turned back and united at their inner edges, and connected to attaching pieces.

The defendants' suspender ends are made of flat braid, with a button-hole formed in them, in the process of plaiting the braid. The patent-office regarded them as a different invention from the complainant's, and issued a patent to the defendants upon that theory.

I do not think there was any patentable novelty in leaving a hole in the strap or braid in the process of weaving, plaiting, or crocheting the material, (the crocheted towel-loop described in Harper's *Bazar* shows this,) but I agree with Mr. Brevoort, the defendants' expert, that a suspender end made in this way is not the suspender end of the complainant's patent. The complainant's article may be made by the use of machine-made braid or cord, while the defendants must be made by hand. The complainant's article can therefore be made more conveniently and at less cost; and this, as the complainant states in his affidavit in the interference proceeding, is the reason why he adopted the mode of making his end which he described in his patent. It would seem that this advantage is really the chief merit of the invention, as flat suspender ends were old. The defendants' braid is not united at its inner edges, and is not a double cord or braid like the complainant's.

The bill is dismissed.